(Court of Common Pleas, Franklin Co., O.)

THE CENTRAL TRUST COMPANY OF NEW YORK, v. STEVENSON BURKE, et al.

---

1. Where a trustee brings a suit in behalf of its cestui que trust, and where the attorneys who represent it are employed, and are to be paid, by some of such cestui que trust, and where they have received, and are to receive, all instructions and directions in regard to the suit from the latter, and where the trustee is indemnified against all cost and expense, including attorney's fees, and where the trustee seeks to dismiss the said attorneys from the case, and to substitute others for them, for the avowed purpose of dismissing the suit, and where it appears that fresh action or actions, brought by the cestui que trust, would be barred by the statute of limitations, it is competent for the court, upon motion of the cestui que trust, by an appropriate order, to forbid the change of attorneys, and the dismissal of the suit.

2. Section 5314, of the Revised Statutes, has no controlling power in such case.

3. Where the inherent common law or equity power of a court of general jurisdiction is only partially defined by a stat-ute, the inherent power is not impaired by the statute, because the court is greater than the statute.

---

PUGH J.

The question presented for decision at this stage of this cause is certainly a novel and unexplored question. It has no brother. The plaintiff is the trustee for the owners and holders of $6,000.000 of bonds; the bonds, are secured by the usual trust mortgage ;the plaintiff was, by that mortgage, made the trustee.

As such trustee it brought this suit. It was brought. and has been prosecuted, for the benefit and advantage of the bond-holders, and not for its own aggrandizement.

The plaintiff has been, until recently, ostensibly represented by the following attorneys: Booth & Keating, Foraker & Crawford.

In truth they were employed by some of the bondholders.

Another fact is, that the C., H. V. & T. Railway Company has, by an appropriate legal instrument, indemnified the plaintiff against all cost and expense which may be incurred by, or claimed against it by reason of this suit.

The plaintiff requested the attorneys named, to withdraw from the case, and informed them that Harrison, Olds and Henderson, had been retained to take charge of the case.

Booth & Keating complied with the request, while Foraker and Crawford declined to do so.

All of these attorneys, being in open court, Harrison, Olds and Henderson announced that, for the plaintiff, they dismissed, or would dismiss, the action.

To the dismissal, the other attorneys interposed earnest and emphatic objection, and, in effect, asked the court to make such an order as would prevent the dismissal.

The right of dismissal, it is claimed, is bestowed upon the plaintiff by Section 5314, if the Revised Statutes; that is the right to dismiss, at any time before the final submission of the case to the court, the case being an equitable one.

This claim of the plaintiff contains two implications: First, That a party has an absolute right to change his attorney at pleasure, upon payment of the attorney's reasonable charges. Second, that where a suit in equity, like the present one, is brought by one, not for his own benefit, but on behalf of others who are not nominally parties, such plaintiff may discontinue, or dismiss the action, at any time before the final submission of the case. These are claimed to be well established rules.

With commendable frankness, the plaintiff tacitly admitted that its purpose in desiring and ordering change of attorneys was to discontinue, or dismiss, the action.

The dismissal of the action, would leave the bondholders for whose benefit the suit, was brought and prosecuted, without re-

dress. I say without redress advisedly; because it must be conceded that any fresh actions which they might institute, would be barred by the statute of limitations.

The proper dispostion of this matter does not make it necessary to smash in the face the statute relied upon. Nor is it necessary to analyze the rules referred to, or consider their precise scope or limitation.

The proper disposition of the question may be reached by either, or all, of several admissible routes, and I will briefly consider them.

1. A client's right to change his attorney for ordinary or proper purposes, can not be gainsaid.

But one of the interesting questions is, will the court, should the court, permit the rules and the statute mentioned, viewed in their most comprehensive aspect, to be wielded for a wrongful purpsoe?

Shall the court permit the plaintiff to exercise the right to change its attorneys, and the right to dismiss the suit for improper purposes, for purposes foreign to the action? To secure some end of its own, shall it be permitted, directly or indirectly, in effect, to extinguish the rights of the creditors whom it represents? For that is the result which will follow in this action, under the guise of applying the rule, that a suitor, a client, has the liberty to dispense with his attorney when he chooses, and to dismiss his action at any time before the final submission.

These questions carry their own negative answers.

One of the highest, noblest, functions of a court of equity is to prevent persons from utilizing rules of law, statutes, etc., for fraudulent purposes.

2. My recollection is that the trust mortgage, in effect, provides that suits whose object is to subserve the interests of the creditors, shall be brought by the plaintiff as trustee for them, and that it shall be indemnified against all resulting loss, cost and expense. The C. H. V. & T Ry., agree to hold the plaintiff harmless ,and to pay all expense, including, attorney's fees, which may be caused by this suit.

The attorneys have been, as a matter of fact, receiving all directions and instructions, not from the plaintiff, but from their real clients, some of the bondholders. The plaintiff knew this, and assented to it. Substantially it agreed to leave the conduct and management of the suit to the bondholders and their attorneys.

These facts manifest, make, constitute, an agreement between the plaintiff and the bondholders. For the prosecution of all necessary actions on behalf of the creditors secured by the trust mortgage, the plaintiff, substantially, agreed that its name might be used as plaintiff. For that agreement, the plaintiff received valuable consideration.

The making of that agreement, and well established rules of equity pleading, forbade the creditors bringing suits on their own account, unless the plaintiff first declined to do so. Therefore they are not obliged to take the consequence of the meditated dismissal.

There are probably several hundred of these creditors. As many independent actions as there are bondholders would have been impracticable, and, indeed, intolerable.

This agreement was, and is, in perfect accord with a cardinal doctrine of equity, that a multiciplicity of suits will be avoided, by means of which a multitude of separate suits, carried on, even in different places, may be conveniently for stalled and drawn into the compass of a single proceeding.

Probably one of the objects of the agreement, and one of the very objects of having railroad mortgages drawn as the one referred to was, was to avoid this suggested multiplicity of suits.

It is not only legitimate, but commendable, and it should be enforced.

It prevented multiplicity of actions, and multiplication of costs.

This court should not, and will not, countenance any breach of the agreement between the plaintiff and the bondholders. Nor will it permit any variation from it to injuriously affect the creditors for whose benefit the arrangement was made.

3. This court has inherent common law and equity powers independently of any statute. One of those powers is to decline to permit a discontinuance or dismissal of an action or suit where it would cause injustice. See Hickey vs. Burt 7 Taut. 46, and Com. vs. Johnson 36 N. J. Re. 211, cited by counsel for plaintiff.

When the inherent powers of a court of general jurisdiction are only, in part, defined by a statute, they are not thereby impaired; because the court is more, is greater, than the statute; and, when such a court limits its action by the statutory definition or description, the limitation ought to be regarded as an exercise of direction rather than as the observance of a statutory and impassable barrier. The statute, Section 5314, does not pretend to define all of the powers of the court in regard to dismissals. Nor does it purport to impair the inherent powers of this court relative to dismissals. It does not divest the court of the power of declining to permit a dismissal of the suit, where it would operate unjustly. In the exercise of this inherent power, the court may decline to permit the substitution of attorneys, or the dismissal of an action, contrary to an express or implied agreement, or even where the substitution or dismissal is sought not for the benefit of the client, or not for the purpose of realizing that to which the client is honestly entitled, but for ulterior and inequitable purposes, detrimental to those on whose behalf the suit was brought.

4. Section 5314 of the Revised Statutes has no sort of application to this case. It is not necessary to challenge the rule, that where a suit in equity is brought by an individual plaintiff, upon his own behalf and

upon behalf of all others similarly situated, such individual plaintiff may discontinue the action at any time before submission. When there is no agreement made, in such a case, that the plaintiff shall carry it on at the expense of the others, each of the others is bound to know that he might have brought suit upon his own account, and, not having done so, he must take the consequence of a dismissal, which he should have known that the law authorized.

But the case at bar does not belong to that category of cases.

The plaintiff did not begin or prosecute this suit upon its own behalf at all. It was brought and prosecuted exclusively upon the behalf of the secured creditors. The plaintiff is only the nominal plaintiff; it is not the real party in interest.

The statute does not comprehend such a case. It signifies that the plaintiff who is the real party in interest, and not a mere nominal plaintiff, shall have the right to dismiss the action.

The status of the Central Trust Company, as plaintiff, I say, is merely nominal. The jurisdiction having once attached, it is not in the power of the plaintiff to dismiss without the concurrence and consent of the real parties in interet.

Besides, the agreement which I have already mentioned, prevents the plaintiff from taking shelter behind this statute.

5. It has no right to direct or control the action. It will not suffer any by the continued prosecution of the case. The court will not permit the agreement to be broken for the inequitable purpose which is so obvious, —a purpose foreign to the action itself, and foreign to any rights of the plaintiff. For, if the secured creditors have any right of action, which, on this motion, must be assumed to be true, the dismissal of this action would completely annihilate them. It would be an intolerable injustice.

The conclusion, therefore, is that the Trust Company had no right to substitute other attorneys for Booth & Keating, Foraker & Crawford, and had, and have, no right to dismiss this action.

An appropriate order forbidding both acts or measures may be drawn.

Booth & Keating, and Foraker & Crawford, for the Creditor.

Harrison, Olds and Henderson, for the Central Trust Company.